**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - DAYTON**

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-34099 |
| | ) | |
| Lofino Properties, LLC, | ) | (Substantively Consolidated) [1] |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | (Judge Lawrence S. Walter) |

**FIRST AMENDED DISCLOSURE STATEMENT WITH
RESPECT TO JOINT PLAN OF REORGANIZATION
FOR
LOFINO PROPERTIES, LLC AND SOUTHLAND 75, LLC**

DATED: June 27, 2014

WOOD & LAMPING LLP
Raymond J Pikna, Jr.
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(513) 852-6039
(513) 852-6087 (fax)
rjpikna@woodlamping.com
*Attorneys for Henry E. Menninger, Jr., Chapter 11
Trustee*

KEATING MUETHING & KLEKAMP PLL
Robert G. Sanker
Jason V. Stitt
Joseph E. Lehnert
One East Fourth Street
Suite 1400
Cincinnati, Ohio  45202
(513) 579-6400
(513) 579-6457 (fax)
*Attorneys for First Financial Bank, N.A.*

---

[1] *In re Southland 75, LLC*, case no. 13-34100, substantively consolidated into lead case no. 13-34099.  Documents filed in the individual cases shall be cited by their respective docket numbers, L.Doc. __ for documents previously filed in *In re Lofino Properties, LLC*, case no. 13-34099, and S.Doc. __ for documents previously filed in *In re Southland 75, LLC*, case no. 13-34100.

# I.  INTRODUCTION

Henry E. Menninger, Jr., Chapter 11 Trustee for Lofino Properties, LLC and Southland 75, LLC, and First Financial Bank, NA (collectively, the "Plan Proponents") submit this First Amended Disclosure Statement, pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), for use in the solicitation of votes on the Joint Plan of Reorganization for Lofino Properties, LLC and Southland 75, LLC (the "Plan") proposed by the Plan Proponents, dated and filed with the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court") on May 2, 2014.

**THE PLAN PROPONENTS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS' CREDITORS AND EQUITY HOLDERS AND URGE ALL CREDITORS AND EQUITY HOLDERS TO VOTE IN FAVOR OF THE PLAN.**

This Disclosure Statement sets forth certain information regarding Debtors' prepetition history, significant events that have occurred during Debtors' Chapter 11 Case, and the anticipated reorganization of the Debtors.  This Disclosure Statement also describes the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan.  This Disclosure Statement, however, is not the Plan.  All descriptions of the Plan are qualified in their entirety by the Plan itself, which is in all instances controlling.  In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims or Interests in impaired Classes must follow for their votes to be counted.  Unless otherwise defined herein, all capitalized terms contained in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

Attached as exhibits to this Disclosure Statement are the following documents:

The Plan ("Exhibit A").

Order of the Bankruptcy Court dated _____, 2014 approving this Disclosure Statement ("Exhibit B").

Financial Projections for Reorganized Lofino after the Effective Date ("Exhibit C").

Liquidation Analysis ("Exhibit D").

Form of Ballot ("Exhibit E").

In addition, if you are entitled to vote to accept or reject the Plan, a Ballot for acceptance or rejection of the Plan is enclosed with this Disclosure Statement.

On _____, 2014, after notice and hearing, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable hypothetical, reasonable investors typical of holders of Claims against or Interests in the Debtors to make an informed judgment as to whether to accept or reject the Plan.  APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A

DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR THE MERITS OF THE PLAN.

ALL HOLDERS OF CLAIMS AND INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY AND TO DISCUSS THEM WITH AN ATTORNEY BEFORE DECIDING EITHER TO ACCEPT OR TO REJECT THE PLAN. THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN.  No solicitation of votes may be made except after distribution of this Disclosure Statement, and no person has been authorized to distribute any information concerning the Debtors other than the information contained herein.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS.   EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

## II.  OVERVIEW OF PLAN

The following is a brief overview of the provisions of the Plan.  This overview is qualified in its entirety by reference to the provision of the Plan, a copy of which is annexed hereto as <u>Exhibit A</u>.

The Plan provides for the payment in full of all valid claims over time.  The reorganization can be summarized as follows:

The Plan designates certain unclassified Claims, five Classes of Claims against the Debtors, and two Classes of Interests.  These Classes take into account the differing nature and priority under the Bankruptcy Code of the various Claims against and Interests in the Debtors.

The following table briefly summarizes the classification and treatment of Allowed Claims and equity interests under the Plan:

| CLASS | DESCRIPTION | TREATMENT | VOTING |
|---|---|---|---|
|  | Administrative Claims | Paid in full on later of the initial distribution date under the Plan, the date such Administrative Expense Claim is Allowed, the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable. | Not entitled to vote. |
|  | DIP/Trustee Payable Claims | Paid in a commercially reasonable manner as they become due. | Not entitled to vote. |
|  | Priority Tax Claims | Paid either (a) in full in cash on the later of the initial distribution date under the Plan, the date such Priority Tax Claim is Allowed and the date such Allowed Priority Tax Claim becomes due and payable, or (b) in the same manner as the treatment provided to Allowed Class U Claims.  To the extent the First Financial Property is sold, as described in Section III.D.2 of the Plan, and the proceeds of the First Financial Sale and the Remaining First Financial Cash Collateral are sufficient to pay the First Financial Secured Claim, the balance of the proceeds shall be paid to the Liquidating Trustee to be distributed to any Priority Tax Claims prior to any payment to the Holders of Class U Allowed Claims. | Not entitled to vote. |
| S-1 | First Financial Secured Claim | Principal and interest paid in accordance with the terms of the First Financial Loan Documents.  Attorneys' fees incurred by First Financial in connection with the Bankruptcy Case paid in six (6) | Impaired - entitled to vote. |

3

| CLASS | DESCRIPTION | TREATMENT | VOTING |
|---|---|---|---|
| | | equal monthly installments beginning on the first Business Day after the Effective Date that a payment is due under the First Financial Loan Documents. The First Financial Loan Documents and all mortgages, liens and security interests granted thereby shall remain in place and fully enforceable according to their terms as of the Petition Date. | |
| S-2 | Glicny Secured Claim | If, by the Effective Date, the Trustee has not abandoned the Glicny Property and the Bankruptcy Court has not entered an Order authorizing the sale of the Glicny Property pursuant to Section 363 of the Bankruptcy Code, then upon the Effective Date, the Trustee shall sell the Glicny Property pursuant to the Glicny Sale Procedures, and all proceeds and the Remaining Glicny Cash Collateral net of costs and expenses of the Sale and costs and expenses awarded the Trustee by the Bankruptcy Court pursuant to Section 506(c) or otherwise shall be applied to the Glicny Secured Claim. To the extent the proceeds of the sale of the Glicny Property, plus the Remaining Glicny Cash Collateral exceed the amount of the Allowed Glicny Secured Claim, the excess shall be paid over to Reorganized Lofino. To the extent that the Allowed Glicny Secured Claim is not paid in full, Glicny shall not have any further Claim against the Debtors or the Estate. | Impaired - entitled to vote. |
| S-3 | Other Secured Claims | Each Allowed Other Secured Claim shall (a) be reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code; (b) be paid in full in cash plus interest; or (c) receive the collateral securing its Allowed Other Secured Claim. | Unimpaired – not entitled to vote. |
| U | General Unsecured Claims | Paid in full, plus interest at the rate provided in 28 U.S.C. § 1961 or such other rate as may be provided by contract, instrument or applicable law, in six equal monthly installments beginning on the Effective Date or on such other terms that the Holder of an Allowed Class U Claim may agree. If not paid within six months of the Effective Date, the First Financial Property shall be sold | Impaired - entitled to vote. |

4

| CLASS | DESCRIPTION | TREATMENT | VOTING |
|---|---|---|---|
| | | and after payment of the claims held by First Financial, each holder of an Allowed Class U Claim shall receive its pro rata share of the remaining proceeds, if any. | |
| C | Convenience Class | Paid in full on the Effective Date. | Impaired - entitled to vote. |
| E-1 | Lofino Properties Equity Interests | Receive beneficial interests in the Liquidating Trust in the same percentages as the percentage interests held in the Lofino Properties on the Petition Date, as provided by the terms of the Liquidating Trust | Impaired - entitled to vote. |
| E-2 | Southland 75 Equity Interests | Holders of Class E-2 Interests shall be impaired, with no distribution to be made under the Plan to Holders thereof, and all such existing Interests in Southland and all warrants, conversion rights, rights of first refusal and other rights, contractual or otherwise, to acquire or receive any Interests in Southland, if any, shall be deemed cancelled as of the Effective Date | Impaired – deemed to reject. |

Following confirmation of the Plan, the Plan will not become effective (as such term is used in Section 1129 of the Bankruptcy Code) until the first Business Day after which certain other conditions have been satisfied or waived, or if a stay of the Confirmation Order is in effect on such date, the first Business Day after the dissolution, lifting, or expiration of such stay. These conditions are described in Article V.B. of the Plan.  For purposes of this Disclosure Statement, the Plan Proponents have assumed that the Effective Date will be August 31, 2014. There can be no assurance that the Effective Date will occur by such date since the satisfaction of many of the conditions to the occurrence of the Effective Date may be beyond the control of the Plan Proponents.

### III.   VOTING PROCEDURES, BALLOTS, AND VOTING DEADLINE

After carefully reviewing the Plan, this Disclosure Statement, and the instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.  Please complete and sign your original Ballot (copies will not be accepted) and return it to:

> Raymond J. Pikna, Jr.
> Wood & Lamping LLP
> 600 Vine Street, Suite 2500
> Cincinnati, OH 45202-2491

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND **RECEIVED** NO LATER THAN _____, 2014, AT 4:00 P.M. EASTERN TIME (THE "Voting Deadline").

If you have any questions about the procedure for voting your Claim or Interest or the amount of your Claim, please contact Raymond J. Pikna, Jr., at (513) 852-6039.  Ballots must be delivered by mail, courier, or delivery service.  Facsimile ballots will not be accepted.  Any completed Ballots received that do not indicate either an acceptance or rejection of the Plan shall be deemed to constitute an acceptance of the Plan.

Pursuant to Section 1128 of the Bankruptcy Code, the hearing on the confirmation of the Plan will be held on _____, 2014, at __:__ a.m./p.m. before the Honorable Lawrence S. Walter, U.S. Bankruptcy Court, Southern District of Ohio, 120 West Third Street, Dayton,  Ohio 45402.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before _____, 2014, at 4:00 p.m.  The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for the announcement of the adjournment date made at the confirmation hearing or at any subsequent adjourned date of the confirmation hearing.

THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERIES TO CREDITORS.  THE PLAN PROPONENTS, THEREFORE, BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CLAIMANTS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

# IV.  GENERAL INFORMATION

A.    Description and History of Debtors' Respective Businesses.

Lofino Properties, LLC ("Lofino Properties") is an Ohio limited liability company that owns real estate comprised of a shopping center located at 6000-6130 Wilmington Pike, Dayton, Ohio 45432 and two vacant stores,[2] located at 6134 Wilmington Pike, Dayton, Ohio 45459 and 8245 Springboro Pike, Dayton, Ohio 45432.   Southland 75, LLC ("Southland") is an Ohio limited liability company which owns the real estate comprised of a shopping center located at 8209 Springboro Pike, Dayton, Ohio 45432 and 8265-8361 Springboro Pike, Dayton, Ohio 45432.

Michael D. Lofino, Trustee of the Michael D. Lofino Trust dated June 1, 1999, as amended, owns 94 Class A Units of Lofino Properties; Michael D. Lofino, Sr., Trustee of the Irrevocable Living Trust Agreement of Michael D. Lofino, Jr. owns 5 Class A Units of Lofino Properties; and Michael D. Lofino, Trustee of the Michael D. Lofino Trust dated June 1, 1999, as amended, owns 1 Class B Unit of Lofino Properties.

Lofino Properties owns 51 Units of Southland and Pinelane, LLC owns 49 Units of Southland.  Michael D. Lofino, Trustee of the Michael D. Lofino Trust dated June 1, 1999, owns 75 Units of Pinelane, LLC; Michael D. Lofino, Sr., Trustee of the Irrevocable Living Trust Agreement of Michael D. Lofino, Jr. owns 15 Units of Pinelane, LLC; and Michael D. Lofino, Sr. Trustee of the Irrevocable Living Trust Agreement of Michelle Lofino, owns 10 Units of Pinelane, LLC.

B.    Events Leading Up to Chapter 11.

1.    First Financial's Secured Loans

First Financial asserts a senior lien position in and to the real estate assets owned by Lofino Properties located at 6000-6130 Wilmington Pike, Dayton, Ohio 45432 (the "First Financial Property") pursuant to a mortgage loan made to Lofino Properties by First Financial. In conjunction with a Loan Agreement entered into between Lofino Properties and First Financial, Lofino Properties executed a Promissory Term Note in favor of First Financial in the amount of Six Million, One Hundred Thousand Dollars ($6,100,000.00) (the "First Financial Note").  Interest accrues on the First Financial Note at the rate of 3.25% in excess of LIBOR per annum and provides for a default rate of 3% plus the highest rate of interest that would otherwise be in effect under the First Financial Note per annum.  To secure payment of the First Financial Note, Lofino Properties and First Financial also entered into a Master Agreement (the "Swap Agreement"), an Open-End Mortgage and Security Agreement (Ohio Property) (the "First Financial Mortgage"), and an Assignment of Rents (the "First Financial Assignment," together with the First Financial Mortgage, the "First Financial Collateral").

---

[2] A retail grocery store formerly operated in each of these locations.

2.     <u>Glicny's Secured Loans</u>

(a)     Loans to Lofino Properties

Glicny asserts a senior secured position in and to the real estate assets owned by Lofino Properties not encumbered by First Financial's liens pursuant to two mortgage loans made to Lofino Properties by Glicny's predecessor in interest, Genworth Life Insurance Company of New York. Both promissory notes executed by Lofino Properties are in the amount of Four Million, Two Hundred Thousand Dollars ($4,200,000.00) (the "Montgomery County Glicny Note" and the "Greene County Glicny Note," respectively, and collectively, the "Lofino Glicny Notes"). Interest accrues on both Notes at the rate of 6.10% per annum and at a default interest rate of 11.10% per annum.

In addition to executing the aforementioned Lofino Glicny Notes, Lofino Properties also executed a mortgage to secure each of those loans. Lofino Properties executed an Open End Mortgage, Assignment of Rents and Leases, and Security Agreement (Also Constituting a Fixture Filing) securing payment of the Montgomery County Note, (the "Montgomery County Glicny Mortgage"), with the real estate located at 8245 Springboro Pike, Miamisburg, Ohio ("Cub Food I"). Lofino Properties also executed an Open End Mortgage, Assignment of Rents and Leases, and Security Agreement (Also Constituting a Fixture Filing) securing payment of the Greene County Note (the "Greene County Glicny Mortgage"), with the real estate located at 6134 Wilmington Pike, Sugarcreek Township, Ohio ("Cub Foods II") Cub Foods I is a one story vacant former supermarket consisting of 65,000 square feet. Cub Foods II is a vacant one story former supermarket consisting of approximately 65,000 square feet; as of the Petition Date, on information and belief, a 2,450 square foot portion of Cubs Foods II was occupied by a state licensed liquor store on a short term lease. The Montgomery County Glicny Note and the Montgomery County Glicny Mortgage as well as the Greene County Glicny Note and Greene County Glicny Mortgage were assigned to Glicny.

(b)     Loans to Southland

Glicny is also a secured creditor of Southland pursuant to a mortgage loan made to Southland by Glicny's predecessor in interest, Genworth Life Insurance Company of New York. Southland executed a Promissory Note in favor of Genworth Life Insurance Company of New York in the amount of Five Million, Six Hundred, Twenty-five Thousand Dollars ($5,625,000.00) (the "Southland Note"). Interest on the Southland Note accrued at the rate of 5.90% per annum. Interest at the default rate runs at 10.90% per annum. The Southland Note was subsequently assigned by allonge to Glicny.

Southland also executed in favor of Glicny's predecessor in interest Genworth Life Insurance Company of New York an Open End Mortgage, Assignment of Rents and Leases, and Security Agreement (Also Constituting a Fixture Filing) (the "Southland Mortgage") to secure payment of the Southland Note. The Southland Mortgage was subsequently assigned to Glicny.

The Southland Mortgage secures payment of the Southland Note with the real estate located at 8209 and 8265-8361 Springboro Pike, Miamisburg, Ohio (the "Southland 75 Property"). The Southland 75 Property is a 120,945 square foot retail center. It was 100% occupied as of the Petition Date and generated approximately $87,000 (including CAM

reimbursed revenue) in monthly rental income.[3]   The Southland 75 Property is owned by Southland.   Collectively, Cub Foods I, Cub Foods II and the Southland 75 Property are hereinafter referred to as the "Glicny Property," as also defined in the Plan.

The Southland Note and the Montgomery County Glicny Note are cross-defaulted and cross-collateralized.

3.      Foreclosure Litigation Instituted By Glicny

In May 2013, Glicny filed foreclosure cases against each of the Debtors in the Montgomery County Court of Common Pleas[4] and Greene County Court of Common Pleas[5], seeking monetary judgments against each of the Debtors, as well as to foreclose on the properties securing the Glicny loans.[6]   Jamie Hadac, of Foresite Realty Partners, LLC, was appointed as receiver in both cases (the "Receiver").   The Glicny Property was in the custody, control, and management of the Receiver as of the Petition Date.

---

[3] Office Max asserts that its lease is terminated as of April 30, 2014; the Trustee disputes that assertion.   The Office Max base rent is $14,201.06/month.
[4] Montgomery County, Case No. 2013 CV 02981.
[5] Greene County, Case No. 2013 CV 0429.
[6] In particular, Glicny sought to foreclose upon its interest in Montgomery County Properties, Parcel Nos. K45258120001, 2, 3, 4; and Greene County Property, Parcel No. L32000100030013600.

## V. THE CHAPTER 11 CASE

On October 4, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[7]  All actions and proceedings against the Debtors and all acts to obtain any property of the Debtors' bankruptcy estates were automatically stayed under Section 362 of the Bankruptcy Code.  This relief gave the Debtors an opportunity to assess and reorganize their respective businesses.  Described below are some of the significant events that have occurred during the Chapter 11 Cases.

A.    The Debtors' First Day Motions

On October 11, 2013 the Debtors filed:

1.    Motion for (I) an Order Directing Joint Administration of Related Chapter 11 Cases Pursuant to Fed. R. Bankr. P. 1015(b) and (II) for Authority to Continue to Make Intercompany Advances With Section 364(c)(1) Administrative Priority (L.Doc. 14, S.Doc. 14 ) ("Motion for Joint Administration");

2.    Motion for an Order Directing the Receiver to (I) Deliver Debtors' Property and (II) File an Account of the Property Held Pursuant to 11 U.S.C. Section 543 ((L.Doc. 15, S.Doc. 15) ("Turnover Motion");

3.    Motion for an Order (A) Authorizing the Debtor to (I) Utilize Glicny Real Estate Holding, LLC's Cash Collateral on an Interim and Final Basis Pursuant to 11 U.S.C. 363 and (II) Provide Adequate Protection Pursuant to 11 U.S.C. 361 and 363 and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (L.Doc. 16, S.Doc. 16) ("Glicny Cash Collateral Motion"); and

4.    Motion of Debtors and Debtors in Possession for the Entry of an Order (A) Scheduling Expedited Hearing on First Day Motions and (B) Approving Form and Manner of Notice Thereof (L.Doc. 17, S.Doc. 17).

On October 17, 2013, the Court conducted a hearing on the Debtors' Motion for Joint Administration, and in accordance with its oral decision, the Court entered an Order denying such motion on October 18, 2013 (L.Doc. 31, S.Doc. 31).  On November 19, 2013, the Court conducted a hearing on Debtors' Turnover Motion and the Glicny Cash Collateral Motion, and in accordance with its oral decision rendered on November 21, 2013, the Court entered Orders denying such motions on November 26, 2013 (L.Docs. 65-66, S.Doc. 59-60).

B.    Glicny's Early Motions

On October 16, 2013, Glicny filed: (1) Motion to Dismiss Debtor for Debtors Abuse (L.Doc. 21, S.Doc. 20); and (2) Motion to Excuse Compliance with any Turnover Requirement Under Section 543(a) Through (c) and to Allow the Receiver to Maintain and Operate such Property in the Ordinary Course of Business and Pursuant to the Receivership Order (L.Doc. 24,

---

[7] *In re Lofino Properties, LLC* Case No. 13-34099 and *In re Southland 75, LLC*, Case No. 13-34100.

S.Doc. 23).  On November 19, 2013, the Court conducted a hearing on Glicny's Motions, and in accordance with its oral decision rendered on November 21, 2013, the Court on November 26, 2013, entered Orders denying such motions (L.Docs. 64, 67, S.Doc. 61-62).

          C.      <u>Appointment of the Trustee</u>

        On October 28, 2013, U.S. Trustee Daniel M. McDermott filed a Motion for Dismissal of Cases pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, for an Order Directing Appointment of a Chapter 11 Trustee (L.Doc. 44, S.Doc. 44).  On November 26, 2013, the Court entered an Agreed Order Granting Motion of the United States Trustee for an Order Directing Appointment of Chapter 11 Trustee (L.Doc. 63, S.Doc. 58) (the "Appointment Order").  The Trustee accepted his appointment as trustee on December 6, 2013 (L.Doc. 76, S.Doc. 70).  In the Appointment Order (L.Doc.76) in the Lofino Properties case, the Court authorized Lofino Properties to manage and maintain the property not in the hands of the Receiver subject to First Financial's interest in cash collateral, but prohibited Lofino Properties from engaging in activities outside the ordinary course of business.  That Appointment Order further provided that Lofino Properties was to remain in control of these assets until the appointment of the Trustee, at which time the assets were to be turned over to the Trustee.  In the Appointment Order (S.Doc.70) in the Southland case, the Court found that the Glicny Property was under the control of the Receiver.  The Appointment Order permitted the Receiver to remain in control over the assets of the former receivership, subject to the limitations described in the Court's order entered on October 24, 2013 (S.Doc. 39), and required the Receiver to turn over the property in her control to the Trustee when appointed, although a transition period might be required.

          D.      <u>The Trustee's Attorneys and Advisors</u>

        The attorneys who have been retained by the Trustee to assist him in the conduct of the Chapter 11 Cases and in his analysis and restructuring of the Debtors' respective businesses are set forth below:

WOOD & LAMPING LLP<br>
600 Vine Street, Suite 2500<br>
Cincinnati, Ohio 45202

          E.      <u>The Trustee's Use of Cash Collateral</u>

        On December 13, 2013, the Trustee filed in the Lofino Properties Chapter 11 Case a Motion For Entry Of Interim And Final Orders Authorizing Trustee To Use Cash Collateral, Granting Adequate Protection, And Scheduling Final Hearing (L.Doc. 81).  On December 16, 2013, the Court entered an Agreed Interim Order Approving Trustee's Motion for Entry of Interim and Final Orders Authorizing Trustee to Use First Financial Bank, N.A.'s Cash Collateral, Granting Adequate Protection, and Scheduling Final Hearing (L.Doc. 83).  On February 13, 2014, the Court entered an Agreed Second Interim Order Approving Trustee's Motion for Entry of Interim and Final Orders Authorizing Trustee to Use First Financial Bank, N.A.'s Cash Collateral, Granting Adequate Protection, and Scheduling Final Hearing (L.Doc. 105).  On April 2, 2014, the Court entered an Agreed Third Interim Order Approving Trustee's

11

Motion for Entry of Interim and Final Orders Authorizing Trustee to Use First Financial Bank, N.A.'s Cash Collateral, Granting Adequate Protection, and Scheduling Final Hearing (L.Doc. 144), which will be in effect until June 30, 2014.

On December 23, 2013, the Trustee filed in the Southland Chapter 11 Case a Motion For Entry Of Interim And Final Orders Authorizing Trustee To Use Cash Collateral, Granting Adequate Protection, And Scheduling Final Hearing (S.Doc. 75). On January 3, 2014, the Court entered an Agreed Interim Order Approving Trustee's Motion for Entry of Interim and Final Orders Authorizing Trustee to Use Glicny's Cash Collateral, Granting Adequate Protection, and Scheduling Final Hearing (S.Doc. 82), which was in effect through January 31, 2014. On May 7, 2014, the Court entered an Agreed Second Interim Order Approving Trustee's Motion for Entry of Interim and Final Orders Authorizing Trustee to Use Cash Collateral of Glicny Real Estate Holding, LLC, Granting Adequate Protection, and Scheduling Final Hearing (L.Doc. 180), which provided the Trustee consent to use Glicny's cash collateral through May 31, 2014. Since May 31, 2014, the Trustee has used Glicny's cash collateral with consent.

F.      The Trustee's Substantive Consolidation of the Chapter 11 Cases

On January 3, 2014, the Trustee moved to substantively consolidate the Debtors' estates (L.Doc. 88, S.Doc. 80), which was approved by Agreed Orders entered on January 29, 2014 (L.Doc. 100, S.Doc. 92). Substantive consolidation of the Debtors' estates effectively combines the assets and liabilities of the Debtors for certain purposes under the Plan. The effect of consolidation is the pooling of the Debtors' assets and of claims against the consolidated Debtors; satisfying liabilities from a common fund; and combining the creditors of the Debtors for purposes of voting on the Plan. Therefore, the Debtors are treated as if they were a single corporate and economic entity. Consequently, a creditor of one Debtor is treated as a creditor of the consolidated Debtors, and issues of individual corporate ownership of property and individual corporate liability on obligations are ignored.

G.      Debtors' Applications to Employ Counsel *Nunc Pro Tunc*

On February 7, 2014, Lofino Properties filed an Application to Employ Paul H. Shaneyfelt as Attorney for Lofino Properties *nunc pro tunc* (L.Doc. 103). On February 11, 2014, Southland filed an Application to Employ Joshua M. Kin as Attorney for Southland *nunc pro tunc* (L.Doc. 104). Glicny, First Financial, the U.S. Trustee and the Trustee objected to these applications (L.Docs. 119-122, 129). The Court scheduled a hearing to be held on April 1, 2014, which has been continued to May 15, 2014 by Agreed Order entered on April 4, 2014 (L.Doc. 138).

H.      The Receiver's Application for Compensation

On March 5, 2014, the Receiver filed an Application for Compensation providing for the payment of the Receiver's fees and expenses, including the Receiver's attorney's fees and expenses (L.Doc. 123). No hearing has been set by the Court.

I.     Bar Date, Notice of Bar Date and Filing of Proofs of Claim.

By Order entered April 4, 2014 (Doc. 139) (the "Bar Date Order"), the Bankruptcy Court, pursuant to Bankruptcy Rule 3003(c)(3), fixed April 30, 2014 at 5:00 p.m. (prevailing Eastern time) as the final deadline for filing certain proofs of claim and proofs of interest in the Chapter 11 Case (the "Bar Date"). The process of evaluation of, objection to, and resolution of all proofs of claim will continue after the Confirmation Date, and the Plan Proponents cannot estimate accurately the amount of Claims that will become Allowed Claims. On April 8, 2014, and on April 11, 2014, the Trustee amended the bankruptcy schedules (Docs. 146, 155, and 156) to add parties, including tenants, as disputed, contingent, unliquidated creditors. The Trustee has requested that May 16, 2014 be fixed as the bar date for those parties to file proofs of claim in the Chapter 11 Case.

J.     Sale Motion.

On May 6, 2014, the Trustee filed a Trustee's Motion to Establish Bidding Procedures for the Sale of Debtors' Certain Property Subject to Mortgages and Liens of Glicny Real Estate Holding, LLC, and Establishing Auction and Hearing Dates (L.Doc. No. 174) (the "Procedures Motion") and a Trustee's Motion Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rule 9019 for (A) Authority to Sell Debtors' Certain Property Subject to Mortgages and Liens of Glicny Real Estate Holding, LLC, Free and Clear of Liens, Claims, and Interests, with Valid Liens to Attach to Proceeds of Sale, and (B) Assumption and Assignment of Associated Unexpired Leases and Executory Contracts, (C) Approval of Settlement Between the Trustee and Glicny Real Estate Holding, LLC, and (D) Related Relief (L.Doc. No. 173] (the "Sale Motion"), whereby the Trustee sought to sell the Southland 75 Property and Cub Food I together and Cub Foods II via auctions to be conducted by the Trustee.

On May 20, 2014, the Court entered an order approving the Procedures Motion as to the Southland 75 Property and Cub Foods I (L. Doc. No. 209). On May 29, 2014, the Trustee conducted an auction for the Southland 75 Property and Cub Foods I. Glicny placed the only bid and was determined to be the successful bidder. On that same date, the Court ruled from the bench approving the sale of the Southland 75 Property and Cub Foods I to Glicny. As of June 26, 2014, no order approving the sale has been entered because the Trustee and Glicny continue to negotiate the terms of the order approving the sale and the documentation regarding the closing of the sale transaction.

On June 9, 2014, the Court entered an order approving the Procedures Motion as to Cub Foods II. On June 12, 2014, the Trustee conducted an auction for Cub Foods II. Glicny was determined to be the successful bidder.

First Financial and Breads of the World, LLC ("Breads") objected to the sale of Cub Foods II on the grounds that the sale could impair the lease between Lofino Properties and Breads. This issue affecting the lease arises from the fact that a portion of the leased premises (including the entire building) is located on the First Financial Property and a portion consisting of fourteen parking spaces and the dumpster is located on the Cub Foods II property. Glicny has taken the position that upon the sale of Cub Foods II, the lease rights of Breads will be

terminated as to Cub Foods II premises. Any impairment of that lease will have a detrimental effect on the estate and give rise to a potential claim for breach of lease by Breads.

The Trustee, Debtors, Breads, Glicny, and First Financial reached an agreement whereby in exchange for a payment of $240,000 to Glicny, Glicny would lease the portion of Breads' leased premises to the Lofino Properties for the remaining term of Breads' lease with the Lofino Properties. Breads will continue to occupy and use the entire leased premises in accordance with the terms of its lease with Lofino Properties. Glicny and Breads have not agreed to a form of lease for the lease between Glicny and Lofino Properties. To the extent the parties are unable to resolve issues related to the settlement, the Court will have to rule on the objections to the Sale Motion. The Court may rule that Cub Foods II is sold subject to the Breads lease or that the sale is free and clear of any lease rights that Breads has in the Cub Foods II property. If Breads is unable to operate its business within its leased premises, it may declare a breach of lease and cease paying rent. The failure of Breads to pay its rent will harm the estate and may lead to a liquidation of the First Financial Property. The Court could deny the Sale Motion on the grounds that it is not in the best interest of the estate. If the dispute is not resolved by agreement, the Trustee may abandon the Cub Foods II property rather than incur additional costs to preserve that property.

      K.    <u>Glicny Relief From Stay.</u>

On May 7, 2014, Glicny filed a Motion for Relief from Stay (L.Doc. No. 185) as to its collateral. On June 4, 2014, the Court granted the motion (L.Doc. No. 218). Therefore, if the Sale Motion is denied as to the Cub Foods II property or Glicny is unable to close the sale transaction for Southland 75 Property and Cub Foods I, the stay is modified to permit Glicny to pursue its remedies through the foreclosures commenced pre-petition.

# VI.  DISCUSSION OF OPERATIONS

A.      <u>Focus and Results of Restructuring.</u>

The Glicny Property, which includes two vacant buildings formerly occupied by grocery stores, will be abandoned, sold pursuant to a motion filed under Section 363 of the Bankruptcy Code prior to the Effective Date, or abandoned or sold by the Trustee after the Effective Date pursuant to the Plan.

After the Effective Date, Reorganized Lofino will consist of the First Financial Property, all leases, associated therewith, and all other operating assets used in the operation of the First Financial Property.  (i) Causes of Action; (ii) Reorganized Lofino Membership Interests; (iii) any assets of the Debtors not used in the operation of the First Financial Property; (iv) accounts receivable owed to Lofino Properties by (a) Michael D. Lofino, (b) Estate of Charles J. Lofino, (c) 5011 Ocean Blvd, LLC, and (d) Lofino's Food Stores, LLC; and (v) the Glicny Property shall vest in the Liquidating Trust.  It is projected that the operations of Reorganized Lofino and the collection and liquidation of non-operating assets of the Debtors by the Liquidating Trustee will generate sufficient revenue to satisfy the obligations of Reorganized Lofino under this Plan and on a going forward basis.

B.      <u>Financial Projections.</u>

Attached hereto as <u>Exhibit C</u> is a copy of financial projections and assumptions (the "Projections") for Reorganized Lofino after the Effective Date.  These Projections were prepared with information provided by the management of Lofino Properties.  This information was assembled and provided at the request of the Trustee and the Trustee has no reason to believe that it is inaccurate, but the Plan Proponents make no representation or warranty as to its accuracy.

The Projections are intended to assess future income and cash flow availability for debt service and to form the basis for determining the feasibility of Plan.  The assumptions included with the Projections are an integral part of the Projections and should be thoroughly reviewed. The actual balance sheet as of the Effective Date may vary materially from the amounts set forth in <u>Exhibit C</u>, based upon: (1) factors beyond the Reorganized Lofino's control, (2) projected operating results materially different from those projected, and (3) inaccuracies in the assumptions underlying the projected balance sheet.  Furthermore, the projected balance sheet assumes an Effective Date of June 30, 2013.  An Effective Date materially different from this date could substantially alter the projected balance sheet.

These Projections present a prediction of future events.  These future events may or may not occur, and the projections may not be relied upon as a guarantee, representation, or other assurance of the actual results that will occur.  Due to the numerous risks and inherent uncertainties that will affect the operations of Reorganized Lofino, the actual results of Reorganized Lofino will undoubtedly be different from those projected, and such differences may be material.  The Disclosure Statement to which these Projections are an exhibit and the Plan of Reorganization should be read for additional information.

The Projections have been prepared by or under the supervision of the Debtors' management and have not been reviewed by independent certified public accountants or prepared in compliance with published guidelines of the American Institute of Certified Public Accountants regarding projections. Moreover, substantial uncertainties are involved in projecting net income and cash flow.

## VII.  PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF SIGNIFICANT ELEMENTS OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE EXHIBITS THERETO.

A.      Classification and Treatment of Claims and Interests.

The Plan provides for the payment of certain unclassified Claims and establishes five Classes of Claims and two Classes of Interests.  The treatment of these various Claims and Interests is discussed in Section II above.  For a more detailed discussion of the treatment to be afforded to the various Claims and Interests, refer to Article III of the Plan.

B.      Means of Implementation of the Plan.

The Plan will be implemented through disposition of the Glicny Property, by cash generated by Reorganized Lofino's operations and the potential sale of the First Financial Property, by the collection and liquidation of the Debtors' non-operating assets, and by recoveries from Causes of Action.  If the General Unsecured Claims are not paid in full within six months of the Effective Date, the Liquidating Trustee will sell the First Financial Property, and after payment of the claims of First Financial, the Holders of General Unsecured Claims will receive their pro rata share of any remaining proceeds.

From and after the Effective Date, Reorganized Lofino shall be governed by an operating agreement which shall provide that the Liquidating Trustee shall serve as the Managing Member.

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date, all property of the Debtors, other than (i) Causes of Action; (ii) Reorganized Lofino Membership Interests; (iii) any assets of the Debtors not used in the operation of the First Financial Property; (iv) accounts receivable owed to Lofino Properties by (a) Michael D. Lofino, (b) Estate of Charles J. Lofino, (c) 5011 Ocean Blvd, LLC, and (d) Lofino's Food Stores, LLC; and (v) the Glicny Property, shall vest in Reorganized Lofino.  Reorganized Lofino shall make cash payments to the Liquidating Trustee as and when necessary for the Liquidating Trust to make the distributions required under the Plan.  On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Lofino may operate its businesses and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  From and after the Effective Date and until the First Financial Secured Claim is paid in full: (a) the First Financial Property shall be managed by a property management company acceptable to First Financial in its sole discretion pursuant to a management agreement in a form and substance acceptable to First Financial in its sole discretion and (b) Reorganized Lofino shall not create, grant, or permit any mortgage, lien, or encumbrance upon the First Financial Property without the prior written consent of First Financial.

The Liquidating Trustee, as the managing member of Reorganized Lofino, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures,

other agreements, or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

      C.      <u>Conditions to Confirmation.</u>

The following are conditions precedent to confirmation of the Plan that must be satisfied or waived in accordance with the terms of the Plan:

      1.      The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance acceptable to the Plan Proponents.

      2.      The Bankruptcy Court shall have found that the Plan satisfies the elements of 11 U.S.C. § 1129.

      D.      <u>Conditions to Effective Date.</u>

The Effective Date, as provided in the Plan, will occur on the first Business Day after the following conditions precedent are satisfied or waived in accordance with the terms of the Plan:

      1.      The Confirmation Order has become a Final Order or, if not, then at least fourteen (14) days have elapsed since the Confirmation Date.

      2.      All government approvals, if any, necessary to confirm the Plan and the transactions contemplated thereby shall have occurred.

      3.      No request for revocation of the Confirmation Order under Section 1145 of the Bankruptcy Code shall have been made or, if made, shall remain pending.

      4.      All actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered, as applicable.

      5.      All authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived, or otherwise resolved.

      E.      <u>Waiver of Conditions to Confirmation and Consummation of the Plan.</u>

Notwithstanding the foregoing, the Plan Proponents reserve the right to waive the occurrence of any conditions precedent to Confirmation or to the Effective Date or to modify any of such conditions precedent. Any such waiver of a condition precedent may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If one of the foregoing conditions cannot be satisfied and the occurrence of such condition is not waived, then the Trustee shall file a notice of the failure of the Effective Date with the

Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

     F.     <u>Distributions Under the Plan.</u>

     1.     <u>Claims Estimates.</u>  The Debtors filed their Schedules on the Petition Date. The Trustee has subsequently amended the Schedules to add potential Claimants.  The Plan Proponents believe that the approximate aggregate amount of Claims and Interests in each Class of Claims or Interests will be as follows:

| CLASS | DESCRIPTION | ESTIMATED CLAIM AMOUNT |
|---|---|---|
| | Administrative Claims | Unknown |
| | DIP/Trustee Payable Claims | Unknown |
| | Priority Tax Claims | Unknown |
| S-1 | First Financial Secured Claim | |
| S-2 | Glicny Secured Claim | |
| S-3 | Other Secured Claims | Unknown |
| U | General Unsecured Claims | Unknown |
| C | Convenience Class | Unknown |
| E-1 | Lofino Properties Equity Interests | N/A |
| E-2 | Southland Equity Interests | N/A |

Except as otherwise provided in the Schedules for Claims listed as undisputed, liquidated, and not contingent or as otherwise specifically allowed by the terms of the Plan, the Plan Proponents do not admit to liability for any Claims or Interests provided above.

     2.     <u>Objections to Claims.</u>  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, any party in interest shall have the right to make and file objections to Claims and the objecting party shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, on or before the Claims Objection Date. From and after the Effective Date, all objections shall be litigated to a Final Order except to the extent the objecting party elects to withdraw any such objection or the objecting party and the claimant elect to compromise, settle, or otherwise resolve any such objection for an amount less than or equal to the amount of the Disputed Claim against which the objection was filed, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without the necessity of Bankruptcy Court approval.

     3.     <u>Projected Distributions.</u>  The Plan Proponents intend for Reorganized Lofino to pay all Allowed Claims in full in accordance with the Bankruptcy Code or to provide the indubitable equivalent of any collateral securing a creditor's Claim.  This is based upon Projections that are subject to change due to factors not within the control of the Plan Proponents

or Reorganized Lofino.   THESE DISTRIBUTIONS ARE IN NO WAY GUARANTEED BY
THE PLAN PROPONENTS, REORGANIZED LOFINO, OR THE PLAN.

          4.     <u>Treatment of Disputed Claims</u>.  If a claim is a Disputed Claim at the time
that it would be entitled to receive a distribution under the Plan if it were an Allowed Claim,
Reorganized Lofino shall pay to the Liquidating Trustee cash in an amount equal to the amount
of the Disputed Claim, or such other amount as the Holder of the Disputed Claim may agree or
the Bankruptcy Court may order.  The Liquidating Trustee shall hold such distribution until the
Disputed Claim becomes an Allowed Claim.   Any amount of cash held by the Liquidating
Trustee in excess of the amount of the Allowed Claim shall be paid over to Reorganized Lofino.

        G.     <u>Treatment of Executory Contracts.</u>

Any executory contracts or unexpired leases listed on Exhibits VII.A-1 and VII.A-2 to
the Plan shall be deemed to have been assumed by Reorganized Lofino on the Effective Date,
and the Plan shall constitute a motion to assume and assign such executory contracts and
unexpired leases.  The Confirmation Order shall constitute an order of the Bankruptcy Court
approving such assumptions pursuant to Section 365 of the Bankruptcy Code.  With respect to
each executory contract or unexpired lease assumed and assigned by the Debtors, unless
otherwise determined by the Bankruptcy Court by a Final Order or agreed to by the parties
hereto prior to the Effective Date, the dollar amount required to cure any defaults of the Debtors
existing as of the Confirmation Date shall be conclusively presumed to be the amount set forth in
Exhibits VII.A-1 and VII.A-2 with respect to such executory contract or unexpired lease.  All
executory contracts and unexpired leases not specifically assumed by the Debtors by order of the
Bankruptcy Court or that are not the subject of pending motions to assume at the Confirmation
Date shall be deemed rejected.  Claims created by the rejection, expiration, or termination of
executory contracts and unexpired leases prior to the Confirmation Date must be filed and served
no later than thirty (30) days after the date on which such contract or lease expired, terminated,
or was rejected.

The Plan Proponents reserve the right to amend Exhibits VII.A-1 and VII.A-2 to the Plan
to add or delete contracts and leases at any time prior to the Confirmation Date.

## VIII.  EFFECT OF CONFIRMATION OF THE PLAN

A.     Discharge of Claims and Interests.

Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge, and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Interests in, the Debtors, any property of the Estates, Reorganized Lofino, or any property of Reorganized Lofino that arose prior to the Confirmation Date.  Except as otherwise provided herein, any default by the Debtors with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.

Except as otherwise expressly provided in the Plan or Confirmation Order, the satisfaction, release, and discharge pursuant to the Plan shall also act as a permanent injunction against any Person who has held, holds, or may hold Claims or Interests against the Debtors, from commencing or continuing any action, employment of process, or act to collect, enforce, offset, recoup, or recover any Claim or Cause of Action that is satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by Sections 524 and 1141 thereof.

B.     Exculpation and Limitation of Liability.

Neither the Plan Proponents nor any of their respective officers, directors, members, employees, or other agents, financial advisors, attorneys, or accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation of the Plan, preparation of the Plan, and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case, or the property to be distributed under the Plan, except for liability based upon willful misconduct or gross negligence as finally determined by a Final Order of the Bankruptcy Court.

C.     Transfer Free of Claims, Liens, Charges, and Other Interests.

Except as otherwise provided in the Plan, on the Effective Date, all the assets of the Debtors that vest in Reorganized Lofino shall vest free and clear of all claims, liens, charges or other encumbrances in interest.  On and after the Effective Date, Reorganized Lofino may operate its business and may use, acquire and dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

D.     Causes of Action.

Except as otherwise provided in the Plan, each Cause of Action of a Debtor or the Trustee, including the Causes of Action listed on Exhibit XII.B. of the Plan, shall be preserved

and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively with, the Liquidating Trust as of the Effective Date. Unless a Cause of Action is expressly waived, relinquished, released, or compromised in the Plan or an order of the Bankruptcy Court, such Causes of Action are reserved for later adjudication by the Liquidating Trustee and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), laches, or other preclusion doctrine shall apply to such Cause of Action as a consequence of the Confirmation of the Plan.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Trustee or Liquidating Trust will not pursue such Cause of Action.

## IX.  CONFIRMATION AND CONSUMMATION PROCEDURES

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

A.      <u>Solicitation of Votes.</u>

In accordance with Sections 1126 and 1129 of the Bankruptcy Code, the Claims and Interests in Classes S-1, S-2, S-3, U, C, and E-1 of the Plan are each impaired, and holders of Claims or Interests in each of such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126 of the Bankruptcy Code, any Claimant holding a Claim in an impaired class under the Plan may vote to accept or reject the Plan so long as such Claim has not been Disallowed and is not the subject of an objection pending as of the Voting Deadline. Nevertheless, if a Claim is the subject of an objection, the holder thereof may vote if, prior to the Voting Deadline, such holder obtains an order of the Bankruptcy Court or the Bankruptcy Court approves a stipulation between the Trustee and such holder, fully or partially allowing such Claim, whether for all purposes or for voting purposes only.  The holders of Interests in Class E-2 of the Plan shall receive no distribution under the Plan, are not entitled to votes, and are deemed to reject the Plan.

Claims that are Administrative Claims, DIP/Trustee Payable Claims, and Priority Tax Claims are unimpaired.  The holders of Allowed Administrative Claims, Allowed DIP/Trustee Payable Claims, and Allowed Priority Tax Claims are conclusively presumed to have accepted the Plan, and the solicitation of acceptances with respect to such Classes is not required under Section 1126(f) of the Bankruptcy Code.

Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan

<u>Under Section 1126(d) of the Bankruptcy Code, an impaired Class of Interests has accepted the Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Interests of such Class who have voted on the Plan have voted to accept the Plan.</u>

A Ballot will not be counted if it is not received at the appropriate address by the Voting Deadline, 4:00 p.m., Cincinnati, Ohio time, on _____, 2014.  In addition, a vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

All Ballots must be returned to the following address:

> Raymond J Pikna, Jr.
> Wood & Lamping LLP
> 600 Vine Street, Suite 2500
> Cincinnati, OH 45202-2491

Questions with respect to the return of Ballots should be directed to Raymond J. Pikna, Jr.,  at (513) 852-6039.

B.      The Confirmation Hearing.

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing.  The confirmation hearing in respect of the Plan has been scheduled for _____, 2014, at _____ a.m./p.m., before the Honorable Lawrence S. Walter, U.S. Bankruptcy Court, Southern District of Ohio, 120 West Third Street, Dayton, Ohio 45402.  The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourn date made at the confirmation hearing.

Any objection to confirmation of the Plan must be made in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount and Class of the Claim held by the objector.  Any such objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court and counsel for the Plan Proponents on or before _____, 2014, at 4:00 p.m., Dayton, Ohio time.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

C.      Confirmation.

At the confirmation hearing, the Bankruptcy Court will confirm the Plan only if all the requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of the Plan are that the Plan is (1) accepted by all impaired Classes of Claims and equity Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such rejecting Class, (2) feasible, and (3) in the "best interests" of creditors and interest holders that are impaired under the Plan.

1.      Acceptance of the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of the Plan by a Class of impaired Claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims in that Class who vote.  Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired interests as acceptance by holders of at least two-thirds (2/3) of the allowed interests in that Class who vote.  Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.  Classes S-1, S-2, S-3, U, C, E-1 and E-2 are impaired under the Plan and are entitled to vote to accept or reject the Plan.  The Plan Proponents reserve the right to seek nonconsensual confirmation of the Plan with respect to any Class of Claims or Interests that is entitled to vote to accept or reject the Plan if such Class rejects the Plan.

2.      Feasibility of the Plan.  In connection with the confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Lofino.

The Plan Proponents believe that the Plan is feasible within the meaning of Section 1129(a)(11).  The Plan will be implemented through funding from Reorganized Lofino

and the Liquidating Trust, and the disposition of the Glicny Property. At the Effective Date, the Plan Proponents believe that Reorganized Lofino and the Liquidating Trust will have sufficient cash flow from operations plus other collectable assets available to provide the Plan distributions required on and after the Effective Date.

The Projections set forth in <u>Exhibit C</u> are not prepared with a view toward compliance with the guidelines established by the American Institute of Certified Public Accountants or the Rules and Regulations of the Securities and Exchange Commission regarding Projections.

Many of the assumptions upon which these Projections are based are subject to uncertainties outside the control of the Plan Proponents or Reorganized Lofino. The actual results of Reorganized Lofino's operations may vary from the projected results, and such results may be material and adverse.

3.    <u>Best Interests of Creditors</u>. To confirm a Plan, the Bankruptcy Court must independently determine that such Plan is in the best interests of all Classes of creditors and Interest Holders impaired by the Plan. The "best interests" test requires that the Plan provide to each non-accepting member of each impaired Class of Claims or Interests a recovery of a value at least equal to the value of the distribution which each such Class would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

To estimate what members of each impaired Class of unsecured creditors and Interest Holders would receive if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if the Chapter 11 Case were converted to a case under Chapter 7 of the Bankruptcy Code and the assets were liquidated by a trustee. The liquidation value of the assets would consist of the proceeds from the disposition of the Debtors' assets, augmented by the cash held by the Debtors, and reduced by the costs of liquidation. The costs of liquidation under Chapter 7 include the compensation of a trustee, the compensation of counsel and other professionals who might be retained by the trustee, disposition expenses, all expenses incurred in the Chapter 7 case, all unpaid expenses incurred by the estate during the Chapter 11 Case (such as compensation for attorneys, financial advisors, or accountants, to the extent Allowed by the Court), litigation costs, claims arising from the operation of the Debtors during the pendency of the Chapter 11 Case, and claims arising during the pendency of the Chapter 7 Case.. These priority Claims would be paid in full to the extent Allowed, with any balance thereafter remaining available to pay Allowed general unsecured Claims or to make any distributions to Interest Holders.

The Plan Proponents have prepared a liquidation analysis for the Plan which they assert demonstrates that the Plan satisfies the "best interests" test. That liquidation analysis can be found at <u>Exhibit D</u>.

4.    <u>Unfair Discrimination and Fair and Equitable Tests</u>. Section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed even if the plan is not accepted by all impaired classes. As long as at least one impaired class of claims has accepted it, it does not

"discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan.  The plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.   Section 1129(b)(2) of the Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable" as it applies to secured creditors, unsecured creditors, and equity holders.   The Plan Proponents believe that the Plan and the treatment of all Classes of Claims and equity Interests under the Plan satisfy the requirements of Section 1129(b) for nonconsensual confirmation of the Plan.

# X.  CERTAIN RISK FACTORS

A.    Inherent Uncertainty of Financial Projections.

The financial Projections for Reorganized Lofino that are included in this Disclosure Statement represent the best estimate of future events based on certain assumptions set forth in those Projections.  These future events may or may not occur, and the Projections may not be relied upon as a guaranty, representation, or other assurance.  As a result of the numerous risks and inherent uncertainties that will affect the operations of Reorganized Lofino, the actual results of Reorganized Lofino may be different from those projected, and such differences may be material and may adversely affect distributions under the Plan.

B.    Uncertainty in Distributions to Unsecured Creditors.

Based upon the Plan Proponents' estimate of Claims, the Plan Proponents believe that Reorganized Lofino will have sufficient cash available to satisfy all Allowed general unsecured Claims.  To the extent that the amount of Allowed general unsecured Claims is significantly higher than the amount estimated by the Plan Proponents, or that Reorganized Lofino's cash available as of the Effective Date is significantly lower than projected by the Plan Proponents, there can be no assurance that Reorganized Lofino will have sufficient cash to satisfy all such Claims.

C.    Failure of Conditions to Confirmation and Effective Date.

The Plan contains a number of conditions precedent to the confirmation of the Plan and the Effective Date of the Plan.  If any one of those conditions is not fulfilled, the Plan Proponents can refuse to consummate the Plan.  While the Plan Proponents have the right to waive any or all of the conditions set forth in the Plan, they are not required to do so.

D.    Breach of Breads of the World Lease.

As provided in the discussion related to the Sale Motion, Glicny has taken the position that a sale of Cub Foods II will terminate Breads' lease rights as to the Cub Foods II property. The impairment of Breads' lease will have a detrimental effect on the projected cash flows to the estate and could render Reorganized Lofino unable to pay General Unsecured Claims in full. Under the Plan, if the General Unsecured Claims are not paid in full within six months of the Effective Date, the First Financial Property will be sold pursuant to the First Financial Sale Procedures.  Although the parties reached an agreement in principal to prevent impairment of the Breads' lease, the parties continue to negotiate the documentation of such settlement.

E.    Glicny 507(b) Claim.

Glicny has asserted to the Trustee that it holds a claim under 11 U.S.C § 507(b) for the diminution of value of its collateral, including for the closing of an OfficeMax store previously located at the Southland 75 Property.  Glicny claims that this 507(b) claim is entitled to super-priority administrative expense status.  Glicny has agreed to waive this claim if the Sale Motion is granted.  Glicny claims that if the Sale Motion is denied, it will prosecute this claim against the

estate.    Glicny has not quantified this claim in any manner.    If Glicny is successful in establishing a super-priority administrative expense claim, unless otherwise agreed or ordered by the Court, such claim will be paid prior to other claims and could affect the ability of Reorganized Lofino to pay other claimants in full.

## XI.  INCOME TAX CONSEQUENCES OF THE PLAN

A.      Generally.

The following discussion summarizes some of the significant federal income tax consequences of the transactions described herein and in the Plan.  This discussion is for informational purposes only, does not represent an opinion of counsel, and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Regulations promulgated thereunder, judicial authority interpreting the Tax Code, and current administrative rulings and pronouncements of the Internal Revenue Service ("IRS"), any of which may be altered with retroactive effect, thereby changing the federal income tax consequences discussed below.  The following discussion does not address foreign, state, or local tax consequences of the Plan, nor does it address special classes of taxpayers (such as S corporations, mutual funds, insurance companies, financial institutions, small business investment companies, foreign companies, nonresident alien individuals, regulated investment companies, broker-dealers, or tax-exempt organizations).  This discussion is limited to taxpayers who own Claims against or Interests in the Debtors as capital assets (generally, property held for investment) within the meaning of Section 1221 of the Tax Code.  Due to the lack of applicable legal precedent, the possibility of changes in law, and differences in the nature of the Claims and methods of accounting, the tax consequences described herein are subject to significant uncertainties.  No ruling will be sought from the IRS prior to the Effective Date with respect to any of the tax aspects of the Plan.  EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

B.      Federal Income Tax Consequences to Creditors.

The federal income tax consequences of the consummation of the Plan to each creditor will depend, among other things, on the consideration to be received by the creditor, whether the creditor reports income using the accrual or cash method, and on whether the creditor has taken a bad debt deduction with respect to its Claim.

1.      Creditors Holding Allowed Claims on the Distribution Date.

(a)      Creditors Receiving Cash Only.  Those creditors receiving cash only under the Plan on the Distribution Date generally will recognize gain or loss equal to the difference between the amount of cash received and the adjusted tax basis of the Claim exchanged therefor.  For those Holders of Claims who acquired their Claims at a significant discount or who have taken a bad debt deduction or write-off with respect to all or a portion of their Claims, it is possible that gain may be recognized as a result of this exchange.

(b)      Creditors Holding Claims That Will be Partially or Completely Unsatisfied.  Holders of Claims that will not be completely satisfied, which include unsecured creditors and persons having interests in the rejected unexpired leases and executory contracts, generally will recognize gain or loss equal to the difference between the amount of cash received and the adjusted tax basis of the Claim exchanged therefor.  For those Holders of Claims who

29

acquired their Claims at a significant discount or who have taken a bad debt deduction or write-off with respect to all or a portion of their Claims, it is possible that gain may be recognized as a result of this exchange.

        2.     <u>Holders of Disputed Claims</u>.  Although not free from doubt, Holders of Disputed Claims under the Plan will be subject to the same tax treatment as the Holders of Allowed Claims when such Claims become Allowed Claims and receive distributions in discharge of such Allowed Claims.

        3.     <u>Character and Timing of Gain or Loss</u>.  The character of any gain or loss as capital or ordinary gain or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors.  Each creditor recognizing gain or loss pursuant to the Plan should consult with his or her tax advisor as to the applicability of those factors to such creditors.

        4.     <u>Receipt of Interest</u>.  Creditors will recognize ordinary income to the extent that they receive any cash or property that is attributable to accrued but unpaid interest that has not already been included for federal income tax purposes in such creditor's taxable income.  A Holder of a Claim which includes accrued interest who receives consideration which is less than the amount of the Allowed Claim must allocate such consideration between principal and interest for federal income tax purposes.  In the event that the amount of cash and other property attributable to interest on a creditor's Claim is less than the amount previously included as interest on the Claim in the creditor's federal taxable income, the unpaid interest may be deducted, generally as a loss or as an adjustment to a reserve for bad debts.

        C.     <u>Importance of Obtaining Professional Assistance.</u>

        AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING SUCH TAX CONSEQUENCES.

## XII.  ALTERNATIVES TO CONFIRMATION AND
### CONSUMMATION OF THE PLAN

The Plan Proponents believe that the Plan affords Holders of Claims and Holders of Interests the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such Holders.  If the Plan is not confirmed, however, the alternatives include (i) liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code, (ii) the preparation and presentation of an alternative plan of reorganization, or (iii) dismissal of the Case.

A.      Liquidation Under Chapter 7.

If no Chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 Case, a trustee would be appointed to liquidate the assets of the Debtors.  It is impossible to predict the outcome of a liquidation of Debtors' assets with certainty.  However, the Plan Proponents believe that liquidation under Chapter 7 would result in smaller distributions being made to creditors than those to be made under the Plan due to (1) the additional administrative expenses of a trustee and attorneys and other professionals to assist such trustee, (2) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection or termination of unexpired leases and executory contracts in connection with the cessation of the Debtors' operations; and (3) the failure to realize the greater going concern value of all the Debtors' assets.  A discussion of the effect that a Chapter 7 liquidation would have on the recovery of Holders of Claims is set forth in Exhibit D hereto.

B.      Alternative Plans.

If the Plan is not confirmed, Plan Proponents or any party in interest could attempt to formulate a different plan of reorganization.  Such a plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of their assets.  During the negotiations that led to the Plan, the Plan Proponents explored various alternatives to the Plan. Plan Proponents believe that the Plan enables Reorganized Lofino to emerge from Chapter 11 successfully and expeditiously, preserves its business, and allows Holders of Claims to realize the highest recoveries under the circumstances.  In a liquidation under Chapter 11 of the Bankruptcy Code, the businesses of the Debtors would continue to operate and the assets of the Debtors would be sold in an orderly fashion over a more extended period of time than in a liquidation under Chapter 7, and a Chapter 7 trustee need not be appointed.  In a Chapter 7 case, Accordingly, creditors may receive greater recoveries in a Chapter 11 liquidation than in a Chapter 7 liquidation.  Although a Chapter 11 liquidation is preferable to a Chapter 7 liquidation, Plan Proponents believe that the Plan provides for a greater recovery for Claimants than a liquidation under either of those scenarios.

C.      Dismissal of Case.

If the Case is dismissed, Glicny's foreclosure actions would continue in State court and Lofino Properties would be in default under the First Financial Loan Documents, permitting First Financial to also commence foreclosure and enforcement proceedings to collect its loans.  This

litigation will likely consume Debtors' resources and would likely adversely affect Debtors' ability to pay Creditors.

## XIII.  CONCLUSION AND RECOMMENDATION

The Plan Proponents believe that confirmation and implementation of the Plan is preferable to any other alternative because it will provide the greatest recoveries to the Debtors' creditors.  In addition, other alternatives would involve significant delay, uncertainty, and substantial additional costs.  **THE PLAN PROPONENTS URGE HOLDERS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**


Dated:  June 27, 2014

Respectfully submitted:


/s/ Raymond J Pikna, Jr
Raymond J Pikna, Jr. (0013135)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(513) 852-6039
(513) 852-6087 (fax)
rjpikna@woodlamping.com
*Attorneys for Henry E. Menninger, Jr., Chapter 11 Trustee*

/s/ Jason V. Stitt
Robert G. Sanker
Jason V. Stitt
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
(513) 579-6400
(513) 579-6457 (fax)
rsanker@kmklaw.com
jstitt@kmklaw.com
*Attorneys for First Financial Bank, N.A.*

**EXHIBIT A**

**JOINT PLAN OF REORGANIZATION**
**FOR**
**<u>LOFINO PROPERTIES, LLC AND SOUTHLAND 75, LLC</u>**

**EXHIBIT B**

**ORDER APPROVING DISCLOSURE STATEMENT WITH RESPECT TO THE
PLAN OF REORGANIZATION OF
<u>LOFINO PROPERTIES, LLC AND SOUTHLAND 75, LLC</u>**

## EXHIBIT C

## FINANCIAL PROJECTIONS AND ASSUMPTIONS

**EXHIBIT D**

**LIQUIDATION ANALYSIS**

**EXHBIIT E**

**<u>FORM OF BALLOT</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................................................................................................1
II. OVERVIEW OF PLAN ..........................................................................................3
III. VOTING PROCEDURES, BALLOTS, AND VOTING DEADLINE ...................6
IV. GENERAL INFORMATION..................................................................................7
   A.   Description and History of Debtors' Respective Businesses..............................7
   B.   Events Leading Up to Chapter 11.....................................................................7
V. THE CHAPTER 11 CASE .....................................................................................10
   A.   The Debtors' First Day Motions ......................................................................10
   B.   Glicny's Early Motions....................................................................................10
   C.   Appointment of the Trustee .............................................................................11
   D.   The Trustee's Attorneys and Advisors ............................................................11
   E.   The Trustee's Use of Cash Collateral ..............................................................11
   F.   The Trustee's Substantive Consolidation of the Chapter 11 Cases ..................12
   G.   Debtors' Applications to Employ Counsel *Nunc Pro Tunc*......................12
   H.   The Receiver's Application for Compensation..................................................12
   I.   Bar Date, Notice of Bar Date and Filing of Proofs of Claim...........................13
   J.   Sale Motion......................................................................................................13
   K.   Glicny Relief From Stay. ................................................................................14
VI. DISCUSSION OF OPERATIONS.........................................................................15
   A.   Focus and Results of Restructuring. ................................................................15
   B.   Financial Projections........................................................................................15
VII. PLAN OF REORGANIZATION..........................................................................17
   A.   Classification and Treatment of Claims and Interests. .....................................17
   B.   Means of Implementation of the Plan. .............................................................17
   C.   Conditions to Confirmation. ............................................................................18
   D.   Conditions to Effective Date............................................................................18
   E.   Waiver of Conditions to Confirmation and Consummation of the Plan............18
   F.   Distributions Under the Plan............................................................................19
   G.   Treatment of Executory Contracts....................................................................20
VIII. EFFECT OF CONFIRMATION OF THE PLAN ...............................................21
   A.   Discharge of Claims and Interests. ..................................................................21
   B.   Exculpation and Limitation of Liability. .........................................................21
   C.   Transfer Free of Claims, Liens, Charges, and Other Interests..........................21
   D.   Causes of Action. ............................................................................................21
IX. CONFIRMATION AND CONSUMMATION PROCEDURES .............................23
   A.   Solicitation of Votes. ......................................................................................23
   Under Section 1126(d) of the Bankruptcy Code, an impaired Class of Interests has accepted the Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Interests of such Class who have voted on the Plan have voted to accept the Plan............................23
   B.   The Confirmation Hearing. ..............................................................................24
   C.   Confirmation. ..................................................................................................24

X. CERTAIN RISK FACTORS ...................................................................................27
    A.   Inherent Uncertainty of Financial Projections. ...........................................27
    B.   Uncertainty in Distributions to Unsecured Creditors..................................27
    C.   Failure of Conditions to Confirmation and Effective Date..........................27
    D.   Breach of Breads of the World Lease. ........................................................27
    E.   Glicny 507(b) Claim. ..................................................................................27
XI. INCOME TAX CONSEQUENCES OF THE PLAN ...........................................29
    A.   Generally......................................................................................................29
    B.   Federal Income Tax Consequences to Creditors. .......................................29
    C.   Importance of Obtaining Professional Assistance. ......................................30
XII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ......31
    A.   Liquidation Under Chapter 7. .....................................................................31
    B.   Alternative Plans. ........................................................................................31
XIII. CONCLUSION AND RECOMMENDATION .................................................33

5532370.1